IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KEYSHAWNA GLOVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 4:21-CV-0495-Y |
| MARK DIRNBERGER, D.O., P.A., d/b/a | § | |
| REGENCY PAIN & THERAPY | § | |
| INSTITUTE and THOMAS J. HONG, | § | |
| D.O., PLLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff KeyShawna Glover, files this Second Amended Complaint pursuant to the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h) against Defendants Mark Dirnberger, D.O., P.A., d/b/a Regency Pain & Therapy Institute and Thomas J. Hong, D.O., PLLC (collectively "Defendants"), and would respectfully show the Court as follows:

**I.     NATURE OF THE CASE**

1.     Plaintiff's claim arises under the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h). Defendants terminated Plaintiff's employment after Plaintiff reported (i) Dr. Hong's fraudulent[1] billing practices involving federal and/or state payors and (ii) Dr. Hong's disregard for patient health and safety – specifically his routine prescription of controlled substances to patients who failed urine drug screens, and/or who exhibited drug-seeking behavior, and/or that he knew obtained prescriptions for controlled substances from other providers.

**II.     JURISDICTION AND VENUE**

---

[1] Plaintiff is not required to prove fraud in order to prevail on a retaliation claim pursuant to 31 U.S.C. § 3730(h).

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 31 U.S.C. § 3730(h).

3.      Venue is proper in the Northern District of Texas pursuant to 31 U.S.C. § 3732(a), as the Defendants reside and transact business in this judicial district.

### III.    PARTIES

4.      Plaintiff KeyShawna Glover ("Plaintiff" or "Glover") is a resident of the State of Texas.

5.      Defendant Mark Dirnberger, D.O., P.A., d/b/a Regency Pain & Therapy Institute ("Regency") is a Texas professional association that provides pain management care and other services at 74 Regency Parkway, Mansfield, TX 76063. It may be served with process through its Registered Agent, Mark Dirnberger, at 2001 SE Green Oaks, Suite 130, Arlington, TX 76018.

6.      Defendant Thomas J. Hong, D.O., PLLC[2] is a Texas professional limited liability company. It may be served with process through its Registered Agent, Thomas J. Hong, at 1808 Birds Fort Trail, Arlington, TX 76005.

### IV.    FACTUAL ALLEGATIONS

**A.      Defendants Jointly Employed Plaintiff**

7.      Regency is an interventional pain management, neuro-musculoskeletal medicine, sports medicine, and osteopathic manipulative medicine practice located in Mansfield, Texas. Upon information and belief, ownership of Regency is divided among the clinic's providers, with Dr. Jason Butler, M.D. ("Dr. Butler") and Dr. Mark Dirnberger, D.O. ("Dr. Dirnberger") each having an ownership share of the clinic. Upon information and belief, Dr. Hong also had an ownership share in Regency during the time period relevant to this Second Amended Complaint,

---

[2] Dr. Thomas Hong, D.O. ("Dr. Hong") is the sole owner of Thomas J. Hong, D.O., PLLC. Accordingly, any reference herein to Dr. Hong shall be synonymous with Thomas J. Hong, D.O., PLLC.

PLAINTIFF'S SECOND AMENDED COMPLAINT                          Page **2** of **15**

July 20, 2020, through March 31, 2021. Regency treats patients with commercial insurance and also derives a significant amount of its revenue from federal and state healthcare programs including Medicare, Tricare, and Medicaid.

8. Plaintiff completed her training to become a Nurse Practitioner in or around May of 2018 and has worked at various pain management clinics since that time. Plaintiff's employment at Regency began on or about July 20, 2020, when she was hired by Thomas J. Hong, D.O., PLLC as a Nurse Practitioner. Plaintiff's duties included performing patient assessments and physical examinations, developing a plan of care, writing prescriptions, issuing referrals, and evaluating the effectiveness of care for patients at Regency who were assigned to Dr. Hong.

9. Plaintiff was a joint employee of Thomas J. Hong, D.O., PLLC and Regency. Dr. Hong entered into an employment agreement with Plaintiff on July 20, 2020. Pursuant to Plaintiff's employment agreement, Plaintiff was to serve as Dr. Hong's nurse practitioner at Regency.

10. Upon information and belief, both Defendants had control over Plaintiff's schedule as a nurse practitioner working at Regency. Regency controlled Plaintiff's day-to-day scheduling. Plaintiff was required to submit her requests for time off to Regency. Similarly, Dr. Hong had the right to control whether Plaintiff worked in-person at Regency or at home doing a telehealth shift.

11. Regency was responsible for maintaining Plaintiff's licensing information and maintaining the active status of same. Regency provided Plaintiff with CEUs, W-4s, and I-9s during her employment.

12. Dr. Hong was financially responsible for paying Plaintiff. However, from July through approximately November of 2020, Lisa Schweyer, a former Regency employee, was responsible for effectuating direct deposits from Dr. Hong to Plaintiff's account.

13.     As a nurse practitioner, Plaintiff was expected to adhere to employment policies and procedures established by Regency. Upon information and belief, both Dr. Hong and Regency had the ability to initiate disciplinary action against Plaintiff for violation of Regency's policies and procedures.

**B.      Plaintiff Reports Dr. Hong's Improper Billing and Patient Health and Safety Concerns**

*i.      Improper Coding of Patient Visits*

14.     From the beginning of Plaintiff's employ at Regency in July 2020, Regency provided Plaintiff no copies of any billing policies or procedures. Furthermore, Regency did not provide Plaintiff any type of orientation or training upon hiring. Dr. Hong took advantage of the lack of billing policies and procedures at Regency and overbilled Medicare and Medicaid for patient visits. Dr. Hong also directed Plaintiff to overbill for patient visits.

15.     Potential CPT billing codes for new patient visits include: 99202, 99203, 99204, and 99205 for 15, 30, 45, and 60-minute visits, respectively. Potential CPT billing codes for existing follow-up patient visits include: 99212, 99213, 99214, and 99215 for 10, 20, 30, and 40-minute patient visits, respectively.[3] The longer a patient visit lasts, the higher the visit reimbursement rate by Medicare and Medicaid will be.

16.     Upon information and belief, Dr. Hong overbilled Medicare and Medicaid for new patient and follow-up patient visits by billing CPT codes with higher rates of reimbursement, despite spending substantially less time with the patient than indicated by the CPT code.

17.     The impropriety of Dr. Hong's billing practices is illustrated by his appointment schedules. Dr. Hong was typically at Regency treating patients from 8:00 a.m. to 5:00 p.m., with

---

[3] *CPT Evaluation and Management (E/M) Office or Other Outpatient and Prolonged Services Code and Guideline Changes,* American Medical Association, https://www.ama-assn.org/system/files/2019-06/cpt-office-prolonged-svs-code-changes.pdf (last visited March 17, 2021).

PLAINTIFF'S SECOND AMENDED COMPLAINT                              Page **4** of **15**

a one (1) hour lunch break. Dr. Hong typically treated approximately fifty (50) patients per day and regularly billed new patient visits under CPT 99204 and follow-up visits under CPT 99214 (45 and 30-minute visits, respectively). However, such visits typically lasted no longer than a few minutes. In fact, if Dr. Hong were truly spending as much time on each patient visit as indicated by the CPT code billed, his time spent in the clinic treating patients would have extended far beyond his typical eight (8) hour work schedule. Dr. Hong also directed Plaintiff to overbill at the same rates.

18.     On or about February 12, 2021, Plaintiff reported Dr. Hong's improper billing practices to Dr. Butler, Dr. Dirnberger, and Ebony Robinson ("Ms. Robinson"), Regency's Practice Administrator. On this date, Plaintiff also notified Dr. Butler, Dr. Dirnberger, Ms. Robinson, and Hermie Ariyibi, Dr. Butler's Nurse Practitioner, that Dr. Hong was improperly billing Medicare for telehealth patient visits with the incorrect GT modifier.

19.     Dr. Hong billed telehealth visits under CPT Code 99213-GT-95, evaluation and management of an established patient in an office or outpatient location.[4] The GT modifier is included to indicate the service is performed with synchronous telecommunication. However, Medicare stopped use of the modifier GT in 2017 when the place of service code, 02 (telehealth), was introduced.[5] CMS requires use of modifier 95 for telehealth services.[6] Upon information and belief, Dr. Hong also improperly billed CPT Code 99204 with the GT modifier for new patients.

20.     In response to Plaintiff's reporting of incorrect billing, all Regency providers were advised to review and correct any of their telehealth billing entries that were incorrect in February

---

[4] *CPT Evaluation and Management (E/M) Office of Other Outpatient and Prolonged Services Code and Guideline Changes*, American Medical Association, https://www.ama-assn.org/system/files/2019-06/cpt-office-prolonged-svs-code-changes.pdf (last visited March 14, 2021).
[5] *Coding for Telemedicine Services*, American Academy of Pediatrics, https://www.aap.org/en-us/Documents/coding_factsheet_telemedicine.pdf (last visited March 14, 2021).
[6] *Special Coding Advice during COVID-19 Public Health Emergency*, American Medical Association, https://www.ama-assn.org/system/files/2020-05/covid-19-coding-advice.pdf (last visited March 15, 2021).

of 2021. Plaintiff corrected her billing submissions; however, Dr. Hong refused to correct erroneous billing submissions that he submitted for payment to federal and/or state payors.

### ii.    Dr. Hong's Disregard for Patient Health and Safety

21.    Upon information and belief, Dr. Hong intentionally underutilized patient urine drug screens ("UDS") in an effort to avoid discharging patients from his service and to continue billing Medicare, Medicaid, and/or Tricare for the patients' treatment.[7]

22.    Prior to December 2020, one of Dr. Hong's patients tested positive for cocaine on two separate visits. In December 2020, this patient was treated for an opioid and cocaine overdose. After the patient's overdose during a patient visit in or around January 2020, Plaintiff informed the patient that she would not prescribe her any more controlled substances. In or around February 2021, this patient sought to obtain medication refills from Dr. Hong without a follow-up appointment. Although he was aware of the patient's recent overdose, Dr. Hong prescribed the patient hydrocodone.

23.    Another of Dr. Hong's patients has continually received positive UDS. Several messages have been exchanged on Regency's electronic medical records software, Athena, between Dr. Hong, Ms. Robinson, and Plaintiff concerning this patient's positive UDS. Pursuant to Athena messages exchanged on or about February 10, 2021, Dr. Hong was made aware that this patient was obtaining prescriptions from multiple other doctors/clinics, and was using different pharmacies to fill such prescriptions. Upon information and belief, Dr. Hong never counseled this patient about their behavior; however, he continued to fill the patient's prescription for Tramadol

---

[7] Additionally, Dr. Hong did not administer UDS to any patient that is involved in an ongoing personal injury lawsuit. Upon information and belief, Dr. Hong did not administer UDS to personal injury patients because a UDS that is positive for illicit drugs could be damaging to their lawsuit.

PLAINTIFF'S SECOND AMENDED COMPLAINT                                      Page **6** of **15**

since April 2019. Furthermore, Dr. Hong issued Tramadol refills for this patient without performing a UDS for nearly thirteen (13) months.

24.    One of Dr. Hong's patients tested positive for Xanax (not included on the patient's prescription monitoring program) on or about January 29, 2019. This patient was not required to submit to another UDS for eleven (11) months, on or about December 17, 2019. This patient's December 2019 UDS was positive for THC and Xanax. The patient was administered another UDS on October 13, 2020, and tested positive for hydrocodone, Xanax, methamphetamines, and THC. Plaintiff's note to the patient's file on or about November 10, 2020, indicated that the patient could not receive any more controlled substances due to routine positive UDS. However, Dr. Hong subsequently prescribed the patient oxycodone despite multiple positive UDS and Plaintiff's note in the patient's file. Although Dr. Hong also insisted that the patient remain on his schedule, the patient tested positive on a UDS administered on or about February 8, 2021, for Morphine, Hydrocodone, Codeine, and THC.

25.    Upon information and belief, Dr. Hong deleted positive and/or inconsistent UDS results from patient charts to avoid discharging patients from his service. Plaintiff treated two (2) of Dr. Hong's patients in or around October 2020. Both patients tested positive for heroin; however, the positive UDS were subsequently deleted from their patient records. This was discovered by Plaintiff in or around December 2020 when the patients tested positive for heroin again and the prior UDS was not present in the patient history. Both patients also tested positive for illicit street drugs in early 2021 and were not discharged from Dr. Hong's service.

26.    In addition to routinely underutilizing patient UDS results in order to continue improperly prescribing medications that are billed to federal payors, Dr. Hong exhibited a flagrant disregard for his patients' health and safety in other instances. For example, in or around December

2020, Dr. Hong failed to get a cardiac clearance to hold a patient's Clopidogrel/Plavix (blood thinner/anticoagulant) prior to performing a spinal injection. Dr. Hong performed the patient's procedure without the clearance on or about February 10, 2021, which caused the patient to have a stroke.

27.     On or about February 24, 2021, Dr. Hong prescribed hydrocodone to a patient with a commercial driver's license. Dr. Hong instructed the patient the medication could not be taken within six (6) hours of operating a commercial motor vehicle. Upon information and belief, Dr. Hong was aware the patient intended to operate a commercial motor vehicle without adhering to such instruction.

28.     On or about October 26, 2020, Plaintiff prescribed a patient Valium, to be taken prior to an injection procedure at Regency. The patient was instructed not to drive on the medication but drove to the procedure anyway. During her commute to Regency on or about October 28, 2020, the patient was in a car accident and totaled her car. Somehow, the ambulance that arrived at the scene of the accident transported her to Regency, where Dr. Hong performed no exam to check for injuries that could have resulted from the car accident. Instead, he administered her scheduled injection and allowed her to leave the clinic immediately after the procedure was completed. At no point did Dr. Hong send this patient to an emergency room to be evaluated after the car accident.

29.     On or about February 8, 2021, one of Dr. Hong's patients called a CVS pharmacy and stated she took twelve (12) oxycodone.[8] Plaintiff spoke to the pharmacist, Joey, who was concerned about the nature of the patient's phone call. Plaintiff shared the pharmacist's concern

---

[8] The CVS pharmacy is located at 1421 Wilshire Blvd., Burleson, TX 76028.

PLAINTIFF'S SECOND AMENDED COMPLAINT                              Page **8** of **15**

and canceled the prescription. A few days later, Dr. Hong refilled two prescriptions for the patient, one for oxycodone and one for hydrocodone.

30. Dr. Hong also routinely issued prescriptions for controlled substances for patients even if they canceled or missed their appointments.

31. By email dated February 12, 2021, Plaintiff notified Dr. Dirnberger and Ms. Robinson of Dr. Hong's routine disregard for his patients' health and safety. On or about February 22, 2021, a meeting was also held between Plaintiff, Dr. Butler, Dr. Dirnberger, and Ms. Robinson, to address Plaintiff's concerns about Dr. Hong.

### C. Retaliation Against Plaintiff

32. On or about February 23, 2021, Plaintiff met with Dr. Hong and Ms. Robinson to discuss Plaintiff's concerns related to Dr. Hong's improper billing practices and patient health and safety. After this meeting, Dr. Hong conveyed to Plaintiff that he would receive nothing more than a "slap on the wrist" for the actions that she reported.

33. On or about March 8, 2021, Plaintiff sent an email to Ms. Robinson detailing several clinical and patient health and safety concerns she had concerning Dr. Hong for the week of March 1-5, 2021. Ms. Robinson subsequently provided this email to Dr. Dirnberger and Dr. Butler.

34. Three days later, on or about March 11, 2021, Dr. Hong instructed Plaintiff not to report clinical concerns to Regency management. Further, Dr. Hong threatened that if Plaintiff did not address her concerns directly with him, he would terminate her employment.

35. Plaintiff immediately reported Dr. Hong's threats to Ms. Robinson on or about March 11, 2021. Plaintiff was so upset by Dr. Hong's threats that Ms. Robinson offered to allow Plaintiff to leave the office early.

36.     By email dated March 11, 2021, Ms. Robinson informed Dr. Hong that she would be performing an internal audit of all information regarding Dr. Hong's patient care, billing, and employee interaction concerns, and that she would submit all clinical concerns to the Texas Medical Board for resolution. Upon information and belief, Ms. Robinson's internal audit was performed as a result of Plaintiff's reports related to Dr. Hong's improper billing and patient health and safety concerns.

37.     Three days later, on or about March 14, 2021, Dr. Hong emailed Plaintiff and instructed her to work from home doing telehealth calls for the entire week. Plaintiff did as she was instructed and worked from home during this week.

38.     On or about March 21, 2021, Plaintiff received correspondence from Dr. Hong's attorney dated March 19, 2021. This correspondence included an undated letter written by Ms. Robinson to Dr. Hong in which Regency specifically requested that Dr. Hong cease Plaintiff's access to Regency and all contact with Regency staff.

39.     According to Ms. Robinson's undated letter, Dr. Hong was placed on administrative leave effective March 18, 2021, with such leave to extend for the duration of Regency's investigation into his actions. Regency's investigation of Dr. Hong stemmed from Dr. Hong's billing impropriety and patient health and safety concerns that Plaintiff reported to Ms. Robinson and Dr. Dirnberger on multiple occasions.

40.     Ms. Robinson's letter also indicated that Plaintiff's access to patient clinicals would be completely restricted along with her company email. However, Ms. Robinson's letter did not provide any rationale for Regency's unilateral restriction of Plaintiff's access to its facility, systems, or staff.

41.     Plaintiff continued to carry out her duties as a nurse practitioner through March 18, 2021, when Regency deactivated Plaintiff's access to its systems. Although Plaintiff carried out her duties as a nurse practitioner and remained available to Dr. Hong after Regency restricted their access to its systems, Dr. Hong stopped payment on three of Plaintiff's paychecks in or around April 2021. At this time, Plaintiff's employment agreement with Thomas J. Hong, D.O., PLLC was still in effect.[9]

42.     On or about March 30, 2021, Plaintiff received correspondence from Dr. Hong's attorney which purported to notify Plaintiff that she was in material breach of her employment agreement with Thomas J. Hong, D.O., PLLC. In the March 30, 2021 correspondence, Dr. Hong's attorney alleged that Plaintiff had breached her employment agreement by failing to comply with applicable policies, procedures, protocols, bylaws, orders, rules or regulations of Regency in providing medical services, among other acts. Dr. Hong's attorney cites to Ms. Robinson's March 18, 2021 notice letter in an effort to demonstrate that Plaintiff breached her employment agreement.

43.     However, Ms. Robinson's notice letter did not contain any allegations or examples of Plaintiff failing to provide medical services pursuant to Regency's policies and procedures. In fact, the only allegation of impropriety included in Ms. Robinson's notice letter pertains to Dr. Hong's actions between April 2020 through March 2021, for which Dr. Hong was placed on administrative leave and under investigation. Furthermore, Plaintiff had no disciplinary history at Regency related to any failure to provide medical services in accordance with Regency's policies and procedures.

---

[9] Per correspondence from Dr. Hong's attorney, Plaintiff's employment with Thomas J. Hong, D.O., PLLC was terminated on April 9, 2021.

PLAINTIFF'S SECOND AMENDED COMPLAINT                                      Page **11** of **15**

44.    In fact, the reason provided by Ms. Robinson in her notice letter for restricting Plaintiff's access to Regency's physical location was to protect Regency's staff. Ms. Robinson further indicated that Regency would no longer be associated with Plaintiff and that it would strictly enforce internal policies on non-productive discussions, gossip, and all discussions that could create a hostile work environment in order to protect the integrity of Regency's investigation into Dr. Hong's actions. In sum, Regency prevented Plaintiff from performing her job functions on-site at the clinic because it did not want to risk Plaintiff discussing Dr. Hong's impropriety with other Regency staff – not because Plaintiff had failed to comply with any of Regency's policies or procedures.

45.    Accordingly, the reasons cited in the March 30, 2021 letter for terminating Plaintiff's employment are pretext. In reality, Dr. Hong retaliated against Plaintiff by stopping payment on Plaintiff's paychecks and terminating Plaintiff's employment contract because Plaintiff reported his unethical billing practices and expressed concern about his patients' health and safety to Regency, which resulted in Dr. Hong being placed on administrative leave and his ultimate termination from Regency.

46.    Regency, as Plaintiff's joint and/or co-employer along with Dr. Hong, also retaliated against Plaintiff for reporting Dr. Hong's improprieties. Ms. Robinson's notice letter did not cite any failure by Plaintiff to provide medical services pursuant to Regency's policies and procedures.

47.    To date, Regency has not cited any action by Plaintiff in violation of its policies, procedures, protocols, bylaws, orders, rules or regulations. However, Regency unilaterally restricted Plaintiff's access to its facility, systems, and staff which constructively prevented Plaintiff from carrying out her job functions. As a result of Regency's retaliation and unilateral

restriction of Plaintiff's access, Plaintiff was prevented from performing her duties as a nurse practitioner at Regency, which Dr. Hong has cited as a reason for termination of Plaintiff's employment.

## V.      CAUSE OF ACTION

### Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(h)

48.      Plaintiff incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

49.      Plaintiff, an employee of Thomas J. Hong, D.O., PLLC and Regency, falls within the scope of the False Claims Act's protection.

50.      Plaintiff was engaged in activity protected by the statute. Plaintiff attempted to prevent harm to the government by reporting Dr. Hong's improper billing practices, which involved federal and state healthcare payors, to Regency staff, including Ms. Robinson, Dr. Dirnberger, and Dr. Butler.

51.      Internal reporting is a protected activity under Section 3730(h). *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994) (noting that several district courts have held that section 3730(h) protects internal whistleblowers)); *U.S. ex rel. King v. Solvay S.A.*, 2015 WL 4256402 (S.D. Tex. 2015); *Bell v. Dean*, 2010 WL 2976752 (M.D. Ala 2010); *Scott v. E.I. Du Pont De Nemours & Co.*, 2014 WL 1689601 (M.D. La. 2014); *Mackey v. Fluor Intercontinental Inc.*, 2015 WL 6125984 (S.D. Tex. 2015). Whistleblower protection under 31 U.S.C. § 3730(h) extends to retaliatory acts by a whistleblower's employer and any person or entity with whom the whistleblower has an employer-type relationship. *See, e.g., United States ex rel. Wuestenhoefer v. Jefferson*, 2014 WL 7409760, at *7 (N.D. Miss. 2014); *see United States ex rel. Bias v. Tangipahoa*

*Par. Sch. Bd.*, 816 F.3d 315, 324 (5th Cir. 2016) (noting Defendants need not be Plaintiff's employers to be held liable for retaliation under the False Claims Act).

52.     Regency retaliated against Plaintiff by restricting her access to its physical facilities and online network such that she could no longer perform her duties as a nurse practitioner at Regency. Such action by Regency led Dr. Hong to allege Plaintiff had breached her employment agreement and was cited as a reason for termination of Plaintiff's employment. Regency's stated reasons for its disassociation from Plaintiff are unworthy of belief, not supported by Ms. Robinson's notice letter to Dr. Hong, and pretext for unlawful retaliation.

53.     Thomas J. Hong, D.O., PLLC and/or Dr. Hong retaliated against Plaintiff by stopping payment of her paychecks and terminating Plaintiff's employment agreement. Dr. Hong retaliated against Plaintiff for no reason other than Plaintiff's engagement in protected activity. Dr. Hong's stated reasons for terminating Plaintiff's employment are unworthy of belief, not supported by Ms. Robinson's notice letter to Dr. Hong, and pretext for unlawful retaliation.

54.     Prior to Plaintiff's termination, Regency and Thomas J. Hong, D.O., PLLC and/or Dr. Hong were aware of and/or had knowledge that Plaintiff had complained about Dr. Hong's fraudulent billing submitted to the federal government and routine disregard for patient health and safety.

55.     As a result of Defendants' retaliation against Plaintiff, Plaintiff suffered damages and mental anguish, emotional distress, humiliation, and embarrassment.

## VI.     JURY DEMAND

56.     Plaintiff hereby demands a trial by jury on all issues so triable.

## VII.     PRAYER FOR RELIEF

57.     Plaintiff prays that judgment be entered in Plaintiff's favor, awarding Plaintiff:

a.  Compensatory damages, including back pay and front pay;

b.  Two times the amount of Plaintiff's back pay, with interest;

c.  Compensation for special damages, including mental anguish and emotional distress;

d.  Prejudgment interest;

e.  Reasonable attorney fees and costs;

f.  A jury to try this cause; and

g.  Such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Justin V. Sumner*

Justin V. Sumner
Texas Bar No. 24063022
E-Mail: jsumner@sumnerschick.com

Sumner Schick
3006 Cole Avenue
Dallas, Texas 75204
(214) 965-9229

ATTORNEYS FOR PLAINTIFF